IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

EVONNE BAILEY,                    )
                                 )
            Plaintiff,           )
                                 )
                                 )      CIV-13-945-R
v.                               )
                                 )
CAROLYN W. COLVIN,               )
  Acting Commissioner of Social  )
  Security Administration,       )
                                 )
            Defendant.           )


REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her applications for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues. The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following

reasons, it is recommended that the Commissioner's decision be reversed and remanded for

further administrative proceedings.

I. Background

Plaintiff filed her application for disability benefits on December 11, 2009 (protective

1

filing date), and alleged that she was disabled due to Sjögren's syndrome.[1]  Plaintiff has a twelfth grade education, and she last worked in May 2001. (TR 134-135).  The medical record reflects Plaintiff has received long-term medical care for Sjögren's syndrome as well as medical treatment for degenerative joint disease, fibromyalgia, chronic fatigue syndrome, chronic rheumatoid arthritis, gastrointestinal reflux disease, candidal esophagitis, chronic anemia due to chronic rheumatoid arthritis and Sjögren's syndrome, osteoarthritis, costochondritis, obstructive sleep apnea, obesity, recurrent respiratory infections, and the residual effects of a fractured right elbow in January 2009 and resulting surgical open reduction and internal fixation of the radial head of her right elbow.

In a hearing conducted before Administrative Law Judge Gordon ("ALJ") on April 10, 2012 (TR 25-51), Plaintiff testified that she cared for herself and her 11-year-old daughter but that her medications caused drowsiness and she was unable to extend her right arm.  She saw a rheumatologist for treatment of her Sjögren's syndrome every four months, took several prescribed medications, including Prednisone, Evoxac, Plaquenil, and narcotic pain medication, and wore knee braces prescribed by her treating rheumatologist, Dr. Gonzalez.  She described joint pain in multiple joints, fatigue, and dizziness requiring her to

---

[1]Sjögren's syndrome is a chronic autoimmune disease in which a person's white blood cells attack their moisture-producing glands. http://www.sjogrens.org/home/about-sjogrens-syndrome. "Although the hallmark symptoms are dry eyes, dry mouth, fatigue, and joint pain, Sjögren's may also cause dysfunction of other organs such as the kidneys, gastrointestinal system, blood vessels, lungs, liver, pancreas, and the central nervous system." Id.  "About half of the time Sjögren's occurs alone, and the other half it occurs in the presence of another autoimmune connective tissue disease such as rheumatoid arthritis, lupus, or scleroderma.  Sjögren's is a systemic disease, affecting the entire body." Id.

lie down four or five hours per day. Plaintiff estimated she could stand about 20 minutes, walk about a block, and lift about 15 pounds.

In a decision entered in July 2012, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of December 11, 2009. Following the required sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to Sjögren's syndrome, rheumatoid arthritis, and obesity. (TR 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ specifically stated that "[t]he evidence regarding the claimant's rheumatoid arthritis fails to establish the required inability to ambulate or perform fine and gross movements or other clinical signs as defined in listing 14.09." (TR 14).

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work "except limited reaching overhead with her right arm and only occasional kneeling." (TR 14). The ALJ found that Plaintiff was not disabled because she was "capable of performing [her] past relevant work as a motel cleaner." (TR 18). Alternatively reaching the fifth and final step of the sequential analysis, the ALJ found that Plaintiff was not disabled because she was capable of performing the requirements of other work available in the economy, including the jobs of "assembly/small products II," "packing line worker," and "repack worker." (TR 19). The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Commissioner concedes that there is not substantial evidence in the record to support the ALJ's step-four decision finding Plaintiff was able to perform her previous job as a motel cleaner. As the Commissioner acknowledges, Plaintiff performed this work more than 15 years prior to the date of her application, and the job should not have been considered past relevant work under the agency's governing regulations.[2] Consequently, with respect to the ALJ's alternative step five finding, "the burden shift[ed] to the Commissioner to show

---

[2]After the VE identified Plaintiff's previous motel cleaner position as past relevant work, the VE changed his testimony during the hearing and stated that the motel cleaner position would not constitute past relevant work because it was not performed within the relevant 15-year time period. (TR 49-50). The ALJ's decision does not address this alteration in the VE's testimony.

the claimant ha[d] the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005)

III. Evaluation of Medical Opinion Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of Dr. Clayton and Dr. Bailey, state agency medical consultants, set forth in an RFC assessment because the ALJ provided no explanation of the physicians' opinions concerning Plaintiff's ability to reach in all directions.

The medical record reflects that Plaintiff has been diagnosed with rheumatoid arthritis affecting her hips, shoulders, and knees. (TR 378, 461). She also fell and fractured her right elbow in January 2009. Her treating rheumatologist, Dr. Gonzalez, noted in July 2009 that Plaintiff had "very limited useage of her right arm" and she was unable to perform repetitive activities with her right hand and unable to reach over her head with her right arm. (TR 461). The consultative examiner, Dr. Abraham, reported that in his examination of Plaintiff in February 2011 she exhibited limited range of motion in her right shoulder of about 30 degrees in all directions, especially when trying to elevate the arm above the head, and limited range of motion in her right elbow of about 20 degrees. (TR 485).

Dr. Clayton provided a physical RFC assessment dated April 7, 2011, in which the physician found that due to her right arm injury Plaintiff had a "limited" ability to reach in "all directions (including overhead)." (TR 494). In explanation of this finding, Dr. Bailey pointed to the report of the consultative examiner, Dr. Abraham, concerning Plaintiff's

limited range of motion in her right shoulder and right elbow. (TR 492-493). On July 12, 2011, Dr. Bailey affirmed Dr. Clayton's RFC assessment. (TR 504).

In the ALJ's decision, the ALJ expressly considered Dr. Clayton's RFC assessment and noted that Dr. Bailey had affirmed Dr. Clayton's opinion. (TR 18). The ALJ stated that he had afforded "significant weight" to these medical opinions "because the evidence of record as a whole does not support finding greater restrictions and limitations." (TR 18). However, in the ALJ's RFC assessment the ALJ found only that Plaintiff could perform "limited reaching overhead with her right arm . . . ." (TR 14). The ALJ did not explain why he did not adopt Dr. Clayton's opinion, affirmed by Dr. Bailey, that Plaintiff would have a limited ability to reach in all directions.

At least one court has recognized that an ALJ's RFC finding of "occasional overhead reaching" was not consistent with the opinion of a physician, whose opinion the ALJ credited, that the claimant had a limited ability to reach in all directions, including overhead. See Gaston v. Comm'r of Social Sec. Admin., 577 Fed. App'x. 739, 742 (9th Cir. 2014)(unpublished op.). In Gaston, the court found that the inconsistency was harmless, however, because the jobs identified by the VE, and relied upon by the ALJ, in finding the claimant was not disabled did not require the ability to reach in all directions. Id.

In this case, the VE testified in response to questioning by Plaintiff's attorney that an individual who could not reach with the dominant arm in all directions would be disabled because "that's going to eliminate work." (TR 50). The ALJ did not address this vocational testimony in the decision or address the inconsistency between the RFC finding and the

medical opinions of Dr. Clayton and Dr. Bailey.

Plaintiff testified at the hearing that she could only "use [her right arm] out in front of me a little bit." (TR 37). This testimony was consistent with the limitation ascribed by Drs. Clayton and Bailey of a limited ability to reach in all directions, not just overhead. Other medical evidence in the record supported the RFC limitation. Plaintiff's treating rheumatologist, Dr. Gonzalez, stated in July 2009 and again in September 2010 that Plaintiff exhibited very limited rotation of her right shoulder with mild contracture in mobility of her right elbow with medial swelling. (TR 453, 462). Thus, it was critical that the ALJ provide reasons for failing to adopt the medical consultants' consistent opinions concerning Plaintiff's ability to work.

Moreover, the Dictionary of Occupational Titles ("DOT"), which provides the job classification information upon which the VE based his testimony at the hearing, states that the positions of small products assembler II and repack line worker both require the ability to constantly reach. DICOT 739.687-030; DICOT 920.687-146. The DOT number given in the VE's testimony and in the ALJ's decision for the position of packing line worker is not accurate. This position, set forth at DICOT 753.687-038, also requires constant reaching. Therefore, the error in the ALJ's decision is not harmless, and the Commissioner's decision should be reversed and remanded for further administrative proceedings.

IV. <u>Step Three</u>

Plaintiff contends that the ALJ erred at step three by failing to evaluate whether her impairments met or medically equaled the requirements of the agency's listings for chronic

anemia and Sjögren's syndrome. Listing 7.00, 20 C.F.R. Pt. 404, Subpt. P, App. 1, describes hematological disorders, including chronic anemia at Listing 7.02. Listing 14.00, 20 C.F.R. Pt. 404, Subpt. P, App. 1, describes immune system disorders, including autoimmune system disorders such as Sjögren's syndrome, at Listing 14.10.

The ALJ's decision addressed only the requirements of Listing 14.09 for rheumatoid arthritis. Further, the ALJ made only a conclusory statement in the step three finding that "[t]he evidence regarding the claimant's rheumatoid arthritis fails to establish the required inability to ambulate or perform fine and gross movements or other clinical signs, as defined in listing 14.09." (TR 14). This conclusory statement does not refer to any medical evidence in the record, and it fails to provide an evidentiary basis for meaningful judicial review in light of the medical record indicating the presence of multiple, severe impairments, only one of which is addressed in the decision.

With respect to Plaintiff's chronic anemia, the record shows she was last treated by Dr. Delizio for this condition in July 2010. (TR 280-281). At that time, Dr. Delizio noted that her hemoglobin, hematocrit, and serum ferritin levels were lower despite treatment and that she was developing iron deficiency. (TR 280). Dr. Delizio also noted that on examination Plaintiff exhibited mild joint changes consistent with rheumatoid arthritis and "[m]oderate to marked pallor . . . without jaundice." (TR 280). The diagnoses were normocytic/normochromic anemia compatible with anemia due to chronic rheumatoid arthritis with Sjögren's syndrome and growth factor induced iron deficiency. (TR 280). Treatment included "additional growth factor therapy in the form of subcutaneous Procrit at

60,000 units." (TR 280).

Plaintiff later reported to Dr. Gonzalez that she was unable to continue treatment for the condition with Dr. Delizio because of lack of funds. (TR 501). Dr. Gonzalez noted in June 2011 that Plaintiff had chronic fatigue, limited ability to walk (knee braces had been prescribed for Plaintiff in December 2009), chronic right arm weakness, and chronic stiffness and restrictions in her hands, lower back, shoulders, and knees. (TR 457, 501). The findings on physical examination at that time included restricted flexion in the right elbow, crepitus and stiffness in both shoulders and the left elbow, ganglion cyst and tenderness in the left wrist, very limited rotation of the right shoulder and limited pronation of the right elbow, decreased grip strength on the right more than the left, joint enlargement in both knees with crepitus and tenderness, pain, swelling, crepitus, and tenderness in both ankles right more than left, weakness and dysfunction in the hips, and limited flexion and weakness in the lumbar spine. (TR 502).

Because there are no findings elsewhere in the decision or the medical record that "conclusively preclude [Plaintiff's] qualification under the listings at step three," the ALJ's error in failing to discuss the medical evidence in connection with the relevant listings is not harmless. See Fischer-Ross v. Barnhart, 431 F.3d 729, 735 (10th Cir. 2005). For this reason as well, the Commissioner's decision should be reversed and remanded for further administrative proceedings.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

REVERSING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ February 2nd , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____ 13th _____ day of _____ January, 2015.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE